*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERICA BOWEN, Personal Representative of the
ESTATE OF CONSTANCE BOWEN,

        Plaintiff-Appellant,

v

BEAUMONT HOSPITAL FARMINGTON HILLS,
BOTSFORD GENERAL HOSPITAL, doing
business as BEAUMONT HOSPITAL
FARMINGTON HILLS, BEAUMONT HEALTH,
HARTFORD NURSING & REHABILITATION
CENTER, OUTER DRIVE PARTNERS LLC, doing
business as HARTFORD NURSING &
REHABILITATION CENTER, MISSION POINT
NURSING & PHYSICAL REHABILITATION
CENTER OF DETROIT, MISSION POINT OF
DETROIT LLC, doing business as MISSION POINT
NURSING & PHYSICAL REHABILITATION
CENTER OF DETROIT

        Defendants-Appellees.

FOR PUBLICATION
July 27, 2026
8:48 AM

No. 374271
Oakland Circuit Court
LC No. 2023-203567-NH

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

MARIANI, P.J.

Plaintiff, acting as the personal representative of Constance Bowen's estate, sued defendants for medical malpractice that allegedly occurred during the COVID-19 pandemic. By way of leave granted,[1] she appeals the trial court's award of summary disposition to defendants based on their respective claims of immunity under the Pandemic Healthcare Immunity Act

---

[1] *Estate of Bowen v Beaumont Hosp Farmington Hills*, unpublished order of the Court of Appeals, entered August 11, 2025 (Docket No. 374271).

(PHCIA), MCL 691.1471, *et seq*. Because defendants have not shown entitlement to PHCIA immunity as a matter of law, we reverse and remand for further proceedings.

## I. BACKGROUND

According to plaintiff's complaint, on April 24, 2020, Constance Bowen (decedent) presented to the emergency department at defendant Beaumont Hospital Farmington Hills (Beaumont) for altered mental status after suffering an unwitnessed fall. After being admitted to the hospital, Beaumont staff performed a skin assessment and observed a skin tear to decedent's left knee and a pressure injury at the midline of decedent's coccyx. A wound assessment performed two days later also revealed a pressure injury to decedent's left foot.

On April 28, 2020, decedent was discharged from Beaumont and admitted to defendant Hartford Nursing and Rehabilitation Center (Hartford). On May 8, 2020, Cheryl Spates, LPN, performed a wound assessment, which accounted for seven pressure injuries. Each of these wounds was treated with a "[g]eneric wound cleanser," except for a pressure injury to decedent's sacrum which was "cleansed with NS." On May 11, 2020, Mary Head, RN, examined defendant and noted the skin treatment decedent received for her pressure wounds. Spates performed another wound assessment on May 14, 2020, which showed some minor changes to the measurements of the identified wounds. On May 17, 2020, decedent was found lying face down on the floor; she complained of head pain but did not realize she was on the floor.

Next, decedent was admitted to defendant Mission Point of Detroit (Mission Point) on June 5, 2020, and added to "the wound care case load." Mission Point treated the pressure ulcer to decedent's "sacrococcyx/bilateral buttocks" with a "negative pressure wound VAC." A wound assessment performed on June 29, 2020, categorized the pressure ulcer on decedent's sacrococcyx as stage 4 with bone exposure.

Decedent was transferred to nonparty Detroit Receiving Hospital one day later for altered mental status. Three wound assessments were performed from June 30 through July 2 in which various nurses recorded their observations and measurements of decedent's pressure wounds. On July 5, 2020, Dr. Annette Carron, DO, noted that decedent had a history of frequent hospitalizations due to sepsis caused by complicated UTIs and osteomyelitis.

On July 7, 2020, decedent was transferred back to Mission Point, where she received hospice care and was returned to the wound care case load. Decedent passed away on July 13, 2020. Her death certificate lists sepsis and the stage 4 sacral decubitus ulcer as her causes of death.

Plaintiff, representing decedent's estate, initiated this medical malpractice action in Wayne Circuit Court on August 17, 2023, raising claims of negligence against Beaumont, Hartford, and

Mission Point, as well as their respective staffs.[2]  In October 2023, plaintiff's case was transferred from Wayne Circuit Court to Oakland Circuit Court on motion from Beaumont.[3]

On December 7, 2023, Beaumont moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10).  Beaumont raised two arguments.  First, it asserted that it was entitled to immunity under the PHCIA because it was a healthcare facility as defined in the PHCIA that provided services in support of the state's response to the COVID-19 pandemic, the treatment decedent received from Beaumont occurred during the time that Beaumont was providing such services, that time period also fell within the PHCIA's specified window for immunity, and plaintiff did not make any allegations that would implicate the PHCIA's exceptions to immunity.  Second, Beaumont argued that it was entitled to immunity under the Public Readiness and Emergency Preparedness (PREP) Act, 42 USC 247d-6d.  In support of its motion, Beaumont attached a copy of plaintiff's complaint and affidavit of merit, as well as legal authority.

On December 20, 2023, Hartford moved for summary disposition on the same substantive grounds.  As for PHCIA immunity, Hartford's argument largely followed Beaumont's, stressing that it was a facility within the meaning of the PHCIA, that it provided services in support of the battle against COVID-19, that it treated decedent during the time both that it was providing those services and that immunity applied, and that no exceptions to PHCIA immunity were alleged to apply.  In support of this position, Hartford stated that a May 12, 2020, wound assessment conducted on decedent by Soua Kue, NP, was performed via telehealth because of the pandemic.  Hartford also maintained that it was entitled to immunity under the federal PREP Act for the same reasons argued in Beaumont's motion.  Hartford attached to its motion a copy of plaintiff's complaint, a medical record from the May 12 wound assessment, documentation regarding Hartford's state licensure, and legal authority.

Mission Point did not file its own motion.  Instead, it submitted two separate filings concurring with the arguments raised in Beaumont's and Hartford's motions.  Mission Point did not include any documents or substantive argument with its concurrences.

After each motion, the trial court entered identical scheduling orders, which set a deadline for plaintiff's responses and a date for a hearing on the motions.  The scheduling orders included the following warning: "The Court will not consider late or non-conforming briefs.  If the non-moving party's response and supporting brief is not timely filed, or if a response is not filed, the Court will assume opposing counsel does not have any authority for its respective position."  The orders also noted that, in such circumstances, the court may issue a written opinion on or before the scheduled hearing date.

Plaintiff did not file a response to either motion.  The trial court then entered an order on April 2, 2024, the day before the scheduled hearing date, which noted plaintiff's failure to respond,

---

[2] For ease and simplicity, this opinion will refer to all Beaumont-related defendants as "Beaumont," all Hartford-related defendants as "Hartford," and all Mission-Point-related defendants as "Mission Point."

[3] Mission Point and Hartford concurred with Beaumont's motion.

recited the above-quoted language from the scheduling orders, and granted both motions for summary disposition under MCR 2.116(C)(10) "for the reasons stated in the two motions," dismissing plaintiff's claims with prejudice.

That same day, plaintiff filed a motion for reconsideration. Plaintiff informed the trial court that she did not receive service of the summary-disposition motions or scheduling orders as the result of an inadvertent clerical error. Because of this error, plaintiff's counsel did not learn of the motions or the impending hearing until that very day.[4] Plaintiff's counsel contacted the court and spoke to an unnamed "efile clerk" who informed counsel that counsel's email address had somehow been "blocked"—an issue that, according to the clerk, was related to the transfer of the case from Wayne to Oakland Circuit Court. The clerk then "unblocked" counsel's email address. Counsel also contacted the attorneys for Beaumont and Hartford, who agreed to adjourn the motion hearing to permit plaintiff time to submit responses to their respective motions—but at roughly the same time defense counsel contacted the court about the proposed stipulated adjournment, the court issued its order granting the motions. Citing to MCR 2.119(F), plaintiff argued that the clerical error epitomized the sort of "palpable error" that warranted reconsideration, and that "[i]t would be the height of injustice for Plaintiff to suffer the most extreme sanction of dismissal with prejudice, because of an error not of his or his counsel's making."

The trial court ordered defendants to respond to plaintiff's motion for reconsideration. All defendants pointed out that plaintiff could only secure relief if she could show palpable error *and* that there would be a different result if that error was corrected. Since they were entitled to PHCIA immunity, all defendants insisted that plaintiff could not show that there would be a different disposition if the motions for summary disposition were resolved on their merits. Beaumont also reasserted its claimed immunity under the PREP Act, and additionally argued that plaintiff had not shown the sort of "palpable error" necessary to merit relief on reconsideration. Beaumont noted that the Register of Actions showed that plaintiff e-filed an Appearance and Proof of Service and was active in the eFile system, given that plaintiff's counsel was responding to discovery requests and submitting his own. Citing to *Cleveland v Hath*, 350 Mich App 320; 32 NW3d 109 (2024), Beaumont contended that the trial court had the authority to enforce its own scheduling order and grant Beaumont's motion.

Plaintiff submitted a reply even though the trial court's briefing order did not authorize her to do so. Emphasizing the general preference to resolve cases on their merits, plaintiff reiterated that the clerical error amounted to palpable error and contended that a resolution on the merits was fundamentally different even if the outcome remained the same. Plaintiff also posited that post-judgment relief under MCR 2.612(C) was warranted since the clerical error was merely an inadvertent mistake.

The trial court denied plaintiff's motion on January 10, 2025. It reasoned that plaintiff had not provided evidence to corroborate the alleged clerical error, which—along with plaintiff's counsel's activity in the eFile system—left the court "unable to determine that a 'palpable error'

---

[4] Plaintiff's motion did not specify how exactly counsel eventually came to learn of the motions and hearing.

took place." The court rejected plaintiff's argument for post-judgment relief for the same reason. Then, citing as "persuasive and dispositive" this Court's decision in *Franklin v McLaren Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366226), the court agreed that defendants were entitled to PHCIA immunity. Since plaintiff had failed to show palpable error or that there would be a different disposition on the merits of the motions for summary disposition, the court concluded she had not shown grounds for relief on reconsideration.

This appeal followed.

## II. STANDARDS OF REVIEW

We review the trial court's award of summary disposition de novo. *Pinebrook Warren, LLC v City of Warren*, 515 Mich 438, 455; 29 NW3d 403 (2024). "[Q]uestions of statutory interpretation and the construction and application of court rules" are also reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

We review "a trial court's decision to enforce its scheduling order for an abuse of discretion." *Cleveland*, 350 Mich App at 329 (citation omitted). The same standard of review applies to the trial court's denial of plaintiff's motion for reconsideration. *Zalewski v Zalewski*, 342 Mich App 429, 433; 995 NW2d 553 (2022). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citation omitted). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019).

Collectively, defendants' motions for summary disposition identified MCR 2.116(C)(7), (C)(8), and (C)(10) as the claimed bases for that relief. "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint" and "may be granted only when the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999) (quotation marks and citation omitted). "[O]nly the pleadings" may be considered when deciding such a motion, and "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.*

A motion under MCR 2.116(C)(10), meanwhile, "tests the factual sufficiency of the complaint," *id.*, and may be granted only when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law," MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks and citation omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A (C)(10) movant "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). When a (C)(10) motion is properly made and supported, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as

otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." *Id.* "If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." *Id*.

MCR 2.116(C)(7), as relevant here, permits a party to seek "[e]ntry of judgment" and "dismissal of the action" when such "is appropriate because of . . . immunity granted by law[.]" In considering such a motion, "[t]he reviewing court must view the pleadings and supporting evidence in the light most favorable to the nonmoving party to determine whether the undisputed facts show that the moving party has immunity." *Kincaid v Cardwell*, 300 Mich App 513, 523; 834 NW2d 122 (2013) (citation omitted). "Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material." *Rowland v City of Detroit*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372120); slip op at 4 (quotation marks and citation omitted). Instead, "the contents of the complaint [are] accepted as true unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant." *Id.* at ___; slip op at 4 (quotation marks and citation omitted). "Where documentary evidence *does* adequately contradict the complaint, . . . a court is to employ the same burden-shifting analysis as with a (C)(10) motion to determine whether the matter can go to trial." *Id.* at ___; slip op at 4-5 (citation omitted).

## III.  ANALYSIS

The trial court granted defendants' motions for summary disposition as unopposed based on the warnings included in the court's related scheduling orders and the grounds for relief asserted in those motions—namely, their bid for immunity under the PHCIA. While the trial court did not err in its decision to enforce its own scheduling orders, it did err by granting defendants' motions based on the PHCIA.[5]

## A.  ENFORCEMENT OF SCHEDULING ORDERS

To start, we find no abuse of discretion in the trial court's decision, consistent with its scheduling orders, to treat defendants' motions for summary disposition as unopposed and dispose of them without a written response or oral argument from plaintiff. There is no dispute that plaintiff did not file a response to the motions by the deadline specified in the orders, and the orders' terms made the consequences for that failure clear. This Court has previously found no abuse of discretion in a court enforcing those same terms and consequences, and we see no reason

---

[5] Though defendants' motions also claimed entitlement to immunity under the PREP Act, the trial court made no mention of the PREP Act in its order granting defendants' motions or its order denying plaintiff's motion for reconsideration; instead, as the court made clear in the latter order, the basis for its award of summary disposition was the PHCIA. In any event, on appeal, Beaumont has affirmatively abandoned its claim of PREP Act immunity in light of recent caselaw on the matter. And neither Hartford nor Mission Point argues for PREP Act immunity on appeal. Accordingly, our focus is on whether defendants are entitled to PHCIA immunity.

to conclude otherwise here. See *Cleveland*, 350 Mich App at 330-332; see also *EDI Holdings LLC v Lear Corp*, 469 Mich 1021; 678 NW2d 440 (2004).

Nor did the trial court abuse its discretion when it denied plaintiff's motion for reconsideration. It was plaintiff's burden under MCR 2.119(F)(3) to show that "(1) the trial court made a palpable error and (2) a different disposition would result from correction of the error." *Luckow v Luckow*, 291 Mich App 417, 427; 805 NW2d 453 (2011) (citation omitted). Plaintiff did not provide any evidence to substantiate her claim that a clerical error obstructed her ability to respond to defendants' motions. While the trial court certainly could have exercised its discretion to allow for a response and adjourn the motion hearing, we cannot say, given plaintiff's failure to substantiate her claim of palpable error, that the trial court's decision to the contrary was outside the range of principled outcomes. See *Farm Bureau*, 328 Mich App at 672; see also *Maldonado*, 476 Mich at 388.

The trial court thus did not err in treating defendants' motions as unopposed. That does not mean, however, that the trial court's decision to *grant* defendants' unopposed motions was necessarily proper. This Court's decision in *Cleveland* is instructive. There, the trial court granted summary disposition to the defendants after enforcing its scheduling order to preclude the plaintiff's untimely response. This Court affirmed the trial court's award of summary disposition under MCR 2.116(C)(10), but not simply because the defendants' requests for that relief were unopposed.[6] This Court explained that "[w]here, as here, the opposing party [to a (C)(10) motion] fails to present any evidence, the motion is properly granted because no genuine issue of material fact exists . . . *unless the moving party's motion fails to present a credible argument or itself presents evidence that creates a question of fact . . . .*" *Cleveland*, 350 Mich App at 331 (emphasis added). This Court then reviewed the defendants' motions de novo under that standard, concluding that they were properly granted on their merits because they "presented viable arguments and did not offer evidence that gave rise to a genuine issue of material fact." *Id*. at 331, 334-337. Accordingly, this Court affirmed the trial court "because [the] plaintiff failed to file timely responses to [the] defendants' summary disposition motions under MCR 2.116(C)(10) *and* the trial court thereafter properly resolved those motions on their merits." *Id*. at 323 (emphasis added). See also MCR 2.116(G)(4) (providing that, "[i]f the adverse party does not so respond, judgment, *if appropriate*, shall be entered against him or her") (emphasis added).

---

[6] Indeed, this Court made clear that "the failure to file a timely brief in response to a dispositive motion is not, by itself, grounds for dismissal as a sanction." *Cleveland*, 350 Mich App at 323. Rather, such a sanction requires the consideration of several factors before its imposition. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 314-315; 14 NW3d 472 (2023). In *Cleveland*, 350 Mich App at 332-333, this Court concluded that the trial court did not purport to dismiss the plaintiff's case as a sanction but instead did so based on "analysis and faithful application of the established principles governing resolution of motions for summary disposition." Similarly here, at no point have defendants presented any arguments in support of dismissal as a sanction, nor did the trial court make any findings or determination to that effect. Rather, as discussed *infra*, the court provided a merits basis for the dismissal, albeit one that we conclude was erroneous.

Here, the trial court stated that defendants' motions were granted "for the reasons stated" in their motions, later clarifying that defendants were entitled to PHCIA immunity based on this Court's decision in *Franklin*. Accordingly, we must review that ruling de novo to determine if defendants' motions, treated as unopposed, were sufficient to demonstrate defendants' entitlement to immunity under the PHCIA as a matter of law.[7]

## B. DEFENDANTS' ENTITLEMENT TO PHCIA IMMUNITY

At the outset, we note that, while the trial court considered and granted defendants' motions under MCR 2.116(C)(10), it seemingly would have been more fitting to review them under MCR 2.116(C)(7). As expressly contemplated by MCR 2.116(C)(7), the motions sought dismissal solely on the basis of "immunity granted by law"—namely, the PHCIA and the PREP Act—and that subrule applies to motions that both do and do not seek consideration of factual material beyond the plaintiff's allegations, see *Rowland*, ___ Mich App at ___; slip op at 4-5.[8] Ultimately, however, the matter is of no practical consequence in this case, as defendants' motions fail regardless of the subrule under which they are analyzed.[9]

## 1. DEVELOPMENT AND SCOPE OF THE PHCIA

The Legislature enacted the PHCIA on October 22, 2020. 2020 PA 240. In doing so, it codified into law the immunity for healthcare providers and facilities that had been granted through

---

[7] On appeal, all defendants argue that plaintiff waived any legal opposition to their motions for summary disposition because she failed to make a substantive argument under the PHCIA before the trial court. As discussed in *Cleveland*, however, plaintiff's failure to provide such a response may render defendants' arguments unopposed, but it does not necessarily render them successful; instead, the trial court—and this Court—must still review the legal arguments and the evidence properly submitted in support to determine if they are sufficient in themselves to show entitlement to judgment as a matter of law. See *Cleveland*, 350 Mich App at 331. And we review that question de novo. *Id.* at 334; *Dextrom*, 287 Mich App at 416. Furthermore, even if the matter is viewed as not properly preserved, we can review an unpreserved issue if, among other things, its consideration "is necessary for a proper determination of the case." *Tolas Oil*, 347 Mich App at 290 (quotation marks and citation omitted). Since defendants' entitlement to PHCIA immunity is "necessary for a proper determination" of this case, we may consider the issue on appeal.

[8] We also note that, of the defendants, only Hartford purported to offer or rely on any extra-pleading documentary evidence regarding decedent's treatment, and for the reasons discussed *infra*, it is not apparent that such evidence could be said to "specifically contradict[]" plaintiff's allegations. *Rowland*, ___ Mich App at ___; slip op at 4; see also *id.* at ___; slip op at 4-5 (explaining that, under (C)(7), the analysis only turns to (C)(10)-style burden-shifting "[w]here documentary evidence does adequately contradict the complaint").

[9] This holds true for MCR 2.116(C)(8) as well, which was also among the bases for relief cited in defendants' motions and which would permit consideration only of whether the allegations in plaintiff's complaint are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Maiden*, 461 Mich at 119 (quotation marks and citation omitted).

-8-

executive orders issued by Governor Gretchen Whitmer to aid the state's response to the COVID-19 pandemic.  See EO 2020-30; EO 2020-61.  The statute's immunity provision delineates its scope as follows:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility. [MCL 691.1475.]

Immunity under the PHCIA "applies retroactively, and applies on or after March 29, 2020 and before July 14, 2020."  MCL 691.1477.

A "health care facility" or "health care provider" as defined under the statute, MCL 691.1473(b)-(c), may invoke PHCIA immunity "if it provided any healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic." *Franklin*, ___ Mich App at ___; slip op at 8.  This includes services given "to those infected with COVID-19 and regular healthcare services provided during the statutory period." *Id.* at ___; slip op at 8; see also *id.* at ___; slip op at 8 ("[W]e understand the immunity provision in MCL 691.1475 to cover both regular medical care and medical treatment specific to COVID-19.").  But for immunity to attach, there must be a connection "between the alleged malpractice and the pandemic." *Skipper-Baines v Bd of Hosp Managers for City of Flint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365137); slip op at 4.  After all, "[t]he Legislature and the Governor would not have limited the immunity conferred pursuant to [MCL 691.1475] to services supporting the pandemic response if it actually intended for all medical providers to be immune from all liability short of gross negligence." *Id.* at ___; slip op at 4.

Our published caselaw demonstrates what sort of connection is sufficient for PHCIA immunity to apply.  For instance, in *Franklin*, ___ Mich App at ___; slip op at 1-2, the plaintiff brought a medical malpractice action against the defendant hospital because he developed pressure ulcers after being hospitalized with COVID-19.  The PHCIA barred that action because the plaintiff "presented at the hospital with signs of COVID-19, was admitted to the COVID-19 floor for COVID-19 treatment, and allegedly developed pressure ulcers as a result of that care." *Id.* at ___; slip op at 9-10.  The defendant's entitlement to immunity was thus grounded in the "clear connection between the pandemic and the services" that "g[ave] rise to the cause of action" in that case. *Skipper-Baines*, ___ Mich App at ___; slip op at 5.

Conversely, there was no such connection in *Skipper-Baines*.  There, the decedent was admitted to the hospital for non-COVID-related reasons and placed in a room with another patient whose treatment was also unrelated to the pandemic; that roommate then attacked the decedent, and the decedent ultimately died. *Id.* at ___; slip op at 1-2.  The decedent, however, had contracted COVID-19 at some point during his hospitalization and his cause of death was listed as "COVID-19 associated pneumonia and complications thereof . . . ." *Id.* at ___; slip op at 2.  The plaintiff's

lawsuit alleged medical malpractice and ordinary negligence in relation to the attack. *Id.* at ___; slip op at 2-5. As this Court explained, the case "stem[med] entirely from the beating inflicted upon the decedent by his roommate," with the alleged negligent acts and omissions being his placement in a room with an unsafe roommate and the failure "to deploy adequate safeguards to protect" him from that roommate—allegations which bore no relationship to COVID-19 or services the defendant provided in connection with it. *Id.* at ___; slip op at 3. This Court stressed that it was "not hold[ing] that immunity only applies when a patient is being treated for COVID-19, but it is clear that there must be some connection." *Id.* at ___; slip op at 4. And under the facts of that case, there was "simply no connection between the pandemic and the alleged negligence/malpractice." *Id.* at ___; slip op at 5.

This Court also found that requisite connection to be absent in *Jokinen v Beaumont Hosp Troy*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370983); slip op at 1. Similar to the instant case, the decedent in *Jokinen* presented to the hospital with altered mental status following a fall and thereafter received wound care for, among other things, a skin tear on her buttocks. *Id.* at ___; slip op at 1-2. The decedent ultimately developed a pressure ulcer and passed away; the plaintiff then sued for the allegedly negligent treatment of the decedent's pressure wounds. *Id.* at ___; slip op at 1-2. The trial court awarded summary disposition to the defendant based on the plaintiff's allegations, but this Court reversed because, "at the pleading stage, it appear[ed] that the decedent did not sustain injury by reason of healthcare services provided in support of the State of Michigan's response to the COVID-19 pandemic." *Id.* at ___; slip op at 1. This Court explained that the defendant's request for immunity was "even weaker than the immunity claim that this Court rejected in *Skipper-Baines*," given that "the decedent in this case was not admitted to the hospital with symptoms of COVID-19, she was never treated for COVID-19, and there [was] no indication that she ever tested positive for COVID-19." *Id.* at ___; slip op at 7.

## 2. DISCUSSION

Applying MCL 691.1475 as interpreted by the published authority of this Court, it is clear that defendants in this case have not made a viable claim to immunity under the PHCIA and are not entitled to judgment as a matter of law on that basis.[10] See *Cleveland*, 350 Mich App at 331. Consider each defendant in turn.

***Beaumont***. Below, Beaumont argued that they were entitled to PHCIA immunity because (1) Beaumont qualified as a healthcare facility that provided services in support of the state's battle against COVID-19, (2) the alleged deterioration of decedent's pressure injuries occurred at the same time Beaumont was providing pandemic-related services, (3) plaintiff's allegations fell within the time period during which statutory immunity applies, and (4) plaintiff did not allege gross negligence or another exception to PHCIA immunity. Beaumont repeats the same argument on appeal. Fatally, however, Beaumont failed to identify, in plaintiff's allegations or otherwise,

---

[10] The trial court's failure to fully appreciate as much is understandable, however, given that the above-summarized authority was very recent and developing at the time that the court considered defendants' motions.

the legally requisite connection between Beaumont's pandemic-related services and the negligence alleged in plaintiff's complaint. Apart from the temporal relationship between plaintiff's claims and the time during which Beaumont generally provided pandemic-related care, Beaumont made no argument and submitted no evidence that showed there was a nexus between the pandemic and the alleged negligence. As this Court has repeatedly stressed, such a temporal overlap, on its own, is insufficient for immunity to attach. See *Jokinen*, ___ Mich App at ___; slip op at 5-7; *Skipper-Baines*, ___ Mich App at ___; slip op at 3-5. Beaumont argues that *Skipper-Baines* and *Jokinen* are factually distinguishable, but this argument misses the forest for the trees. Regardless of any purported factual distinctions, *Skipper-Baines*, *Jokinen*, and *Franklin* all stand for the proposition that there must be a connection between pandemic-related services and the services that resulted in the alleged negligence. That requisite connection is absent from Beaumont's arguments and evidence in support of its motion for summary disposition; accordingly, that motion, even taken as unopposed, fails to demonstrate that Beaumont is entitled to judgment as a matter of law under the PHCIA.

Perhaps in recognition of this deficiency, Beaumont makes a new argument for the first time on appeal: that decedent's medical records, which plaintiff submitted with her brief on appeal, show that decedent was evaluated and tested for COVID-19 upon her admission to Beaumont, thereby demonstrating a sufficient connection for PHCIA immunity to apply. This argument suffers from procedural and substantive defects. As Beaumont itself points out, these records are not properly before us on appeal, as they were not part of the record below. "When reviewing a motion for summary disposition, this Court's review is limited to review of the evidence properly presented to the trial court." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 380; 775 NW2d 618 (2009). Accordingly, we cannot now consider such evidence, on plaintiff's behalf or defendants'. *Id.* at 381. Furthermore, even if we were to do so, we do not see how the mere fact of COVID-19 testing upon admission, with nothing more, would provide proof of any connection between the pandemic and the alleged negligence in this case.[11]

---

[11] In support of its COVID-testing argument, Beaumont relies on *Griggs-Swanson v Beaumont Hosp Farmington Hills*, unpublished per curiam opinion of the Court of Appeals, issued on May 30, 2024 (Docket No. 364134). Of course, and unlike the published precedent discussed above, *Griggs-Swanson* is not binding. MCR 7.215(C). Nor does it help Beaumont since, in that case, there was a connection between the defendant hospital's pandemic services and the alleged negligence. The plaintiff in *Griggs-Swanson* was experiencing COVID-19 symptoms, was transported by ambulance to the hospital where he went to the tent for COVID-19 screening, and was evaluated by a nurse and a doctor. *Griggs-Swanson*, unpub op at 1. But he did not receive a COVID-19 test and was discharged with a prescription for medication. *Id.* Because he would not leave the tent, security escorted the plaintiff out, at which point he allegedly suffered an injury; the plaintiff then sued the security officer and the hospital. *Id.* at 2. A panel of this Court held that PHCIA immunity applied because the plaintiff's "alleged injuries occurred while he was at the Hospital for the purpose of obtaining treatment for suspected COVID-19." *Id.* at 4. Unlike *Griggs-Swanson*, Beaumont has failed to show in this case that decedent's COVID-19 test was in any way connected to the allegedly negligent treatment of her pressure injuries.

-11-

***Hartford***. Hartford's motion is similarly deficient. Like Beaumont, Hartford's statutory argument under the PHCIA relied on the temporal overlap between the pandemic-related services it rendered in support of the state's pandemic response and the services it provided to decedent. As for any connection between its pandemic-related services and the alleged negligence, Hartford only made the conclusory assertion that "[decedent's] alleged injuries were that of multiple pressure ulcers, which allegedly deteriorated by reason of the health care services [Hartford] provided in support of this state's response to the COVID-19 pandemic." Hartford similarly represents on appeal that it "modified its pressure ulcer care" in response to the pandemic. But plaintiff's complaint alleged nothing of the sort, and Hartford's motion (and appellate brief, for that matter) did not develop a meaningful legal or factual argument in support of this claim. Hartford noted that a wound assessment performed on decedent on May 12, 2020, by Soua Kue, NP, was done via telehealth because of the pandemic, and attached to its motion a record of that assessment. That documentation, however, did not itself state the reason for the telehealth format of the May 12 assessment, and in any event, plaintiff's complaint does not allege any negligence in connection with a wound assessment performed on May 12; indeed, it does not even mention a May 12 assessment or name Soua Kue, NP. We fail to see how this argument and evidence, even taken as unopposed, would be sufficient under controlling precedent to show the existence of the requisite connection between the pandemic and the alleged negligence in this case, such that Hartford would be entitled to judgment as a matter of law under the PHCIA on its basis.

***Mission Point***. Mission Point did not file its own motion for summary disposition or make any case for PHCIA immunity particular to the care that it provided to decedent. Instead, it simply concurred with the arguments raised in its co-defendants' motions. Because those arguments fail, so too does Mission Point's bid for judgment as a matter of law.

In sum, the trial court erred when it awarded summary disposition to defendants because their motions, even when duly reviewed as unopposed, failed to show that defendants were entitled to judgment as a matter of law under the PHCIA's immunity provision. We therefore reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel

-12-